IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LYNETTE S. KIRKPATRICK,                    6:12-cv-01485-BR

       Plaintiff,                         OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

       Defendant.


KATHRYN TASSINARI
BRENT WELLS
Harder, Wells, Baron & Manning, P.C.
474 Willamette
Suite 200
Eugene, OR 97401
(541) 686-1969

       Attorneys for Plaintiff

---

   [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case.  No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 -  OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**DAVID J. BURDETT**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2522

      Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Lynette S. Kirkpatrick seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) payments under Title XVI.

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough review of the record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this matter.

2 -  OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed her application for SSI on May 8, 2008. Tr. 11, 281.  Plaintiff's last date insured was March 31, 2003. Tr. 238.  Her application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on June 15, 2011.[2]  Tr. 11.  At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified at the hearing.  Tr. 11.

The ALJ issued a decision on June 29, 2011, in which he found Plaintiff is not entitled to benefits.  Tr. 21.  That decision became the final decision of the Commissioner on June 29, 2012, when the Appeals Council denied Plaintiff's request for review.  Tr. 1.

## BACKGROUND

Plaintiff was born on October 3, 1966, and was 44 years old at the time of the hearing.  Tr. 19, 35, 238.  Plaintiff completed a general equivalency degree.  Tr. 35.  Plaintiff has prior relevant work experience as a gas-station clerk and a

---

[2]  The record reflects a series of hearings preceding the June 15, 2011, hearing.  A hearing was originally held on March 16, 2010, at which Plaintiff requested and the ALJ granted a postponement.  A hearing was then held on July 13, 2010, at which the ALJ ordered a neuropsychological evaluation of Plaintiff.  A subsequent hearing was held on February 2, 2011, at which Plaintiff's attorney appeared, but Plaintiff did not. Tr. 11, 70-92.

3 -  OPINION AND ORDER

grocery or convenience-store clerk.  Tr. 62, 249.

Plaintiff alleges disability since December 1, 2007, due to emotional and eating disorders, blackouts, cramping and excessive bleeding, low blood pressure, nausea, anxiety, panic attacks, weight loss, herniated discs, back and hip pain, post-traumatic stress disorder, and cachexia.  Tr. 11, 223, 238.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence except where noted.  *See* Tr. 13-21.


## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

4 -  OPINION AND ORDER

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a "mere scintilla" of evidence but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

5 - OPINION AND ORDER

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. § 416.920.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(I).  *See also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed

Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine

7 -  OPINION AND ORDER

whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since May 8, 2008, her application date.  Tr. 13.

At Step Two the ALJ found Plaintiff has the severe impairments of "lumbar spine degenerative disc disease; cervical spines train [*sic*], status post motor vehicle accident; depression; anxiety disorder; cognitive disorder; pain disorder; alcohol and marijuana abuse; and features of histrionic personality disorder."  Tr. 13.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of

8 -  OPINION AND ORDER

Impairments.  Tr. 13.  The ALJ found Plaintiff can perform light work as defined in 20 C.F.R. § 416.967(c) with the following limitations:  "She can lift up to 20 pounds occasionally and up to 10 pounds frequently.  She can stand/walk at least two out of eight hours and sit for about six out of eight hours.  She can only occasionally climb ramps, stairs, ladders, ropes, or scaffolds, stoop, or crouch.  She can no more than frequently balance, kneel, or crawl.  She must avoid concentrated exposure to hazards, including machinery and heights.  She is limited to simple and repetitive tasks.  She can have only sporadic or incidental public contact."  Tr. 15.

At Step Four the ALJ concluded Plaintiff was unable to perform any past relevant work.  Tr. 19.

At Step Five the ALJ concluded Plaintiff was able to perform the jobs of small-products assembler, electronics worker, or food assembler, which exist in the national economy.  Accordingly, the ALJ found Plaintiff has not been disabled since May 8, 2008. Tr. 20.

## DISCUSSION

Plaintiff contends the ALJ erred when he improperly (1) rejected Plaintiff's testimony; (2) rejected the opinion of Brian G. Jones, M.D., a treating physician; (3) rejected the opinion of David Northway, Ph.D., an examining physician; (4)

9 -  OPINION AND ORDER

rejected the opinion of Heidi Tafjord, N.P., a treating nurse;
and (5) provided the VE with an incomplete hypothetical.

**I.   Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he failed to give clear
and convincing reasons for rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two
requirements for a claimant to present credible symptom
testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and she must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th
Cir. 1986).  The claimant, however, need not produce objective
medical evidence of the actual symptoms or their severity.
*Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

If the claimant satisfies the above test and there is not
any affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if he provides clear and
convincing reasons for doing so.  *Parra,* 481 F.3d at 750 (citing
*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General
assertions that the claimant's testimony is not credible are
insufficient.  *Id.*  The ALJ must identify "what testimony is not
credible and what evidence undermines the claimant's complaints."
*Id*. (quoting *Lester*, 81 F.3d at 834).

The consistency of claimant's daily activities with the

medical record is relevant when determining the claimant's
credibility and may constitute a clear and convincing reason to
reject a claimant's testimony.  *Smolen,* 80 F.3d at 1284.

The ALJ concluded Plaintiff's medically determinable
impairments could reasonably be expected to cause Plaintiff's
alleged symptoms, but he concluded Plaintiff's statements
concerning the intensity, persistence, and limiting effects of
her symptoms were not credible "to the extent they are
inconsistent with the [RFC]."  Tr. 24.

Plaintiff testified she has low-back problems that cause
pain to shoot from her low back through her hip and down to her
ankle.  Tr. 51-52.  She stated she can walk around the grocery
store, but she has problems with her equilibrium and has to lean
on the shopping cart or use a "driving basket."  Tr. 52.
Plaintiff testified she has a difficult time standing, can only
stand for five minutes at a time, and has to take a nap before
she showers to remain "stable enough."  Tr. 53.  Plaintiff also
stated she has numbness and tingling in her left thumb and her
index and little fingers "any time I move my arm in a wrong
position."  Tr. 49-50.  She also stated she frequently drops
things from her left hand such as a gallon of milk or a basket of
laundry.  Tr. 50.  Plaintiff testified she is unable to perform
her "normal activities" when she has headaches, and her headaches
seem to be related to the neck pain she experiences.  Tr. 48-49.

Plaintiff also testified she has trouble keeping track of appointments, does not like leaving her home, and is afraid she will pass out in public.  Tr. 55-58.  Plaintiff stated she is constantly depressed and feels sad and alone.  Tr. 59.  These feelings are worse when Plaintiff is out in public, and they prevent her from engaging in social activities.  Tr. 59.

The ALJ found Plaintiff's credibility was undermined by the fact that she is a "poor historian."  For example, Plaintiff testified she was involved in an accident, but she stated it was not a car accident.  Tr. 39-40.  The medical records, however, show that it was a car accident, Plaintiff had been driving, and she was intoxicated.  Tr. 722-23.  The ALJ also found the effects from another car accident on April 22, 2010 "are not as significant as she alleges" as reflected in the fact that Plaintiff did not seek medical attention following that accident until June 14, 2010.  Tr. 17, 777.  Plaintiff, however, points out that the record reflects Plaintiff was admitted to the emergency room on April 22, 2010, for injuries sustained from the accident.  Tr. 716.

The ALJ also found Plaintiff's attendance in June 2010 at "a three-and-a-half hour graduation ceremony, standing most of that time [and clapping], five hours at go-cart races, and half-hour long car rides each way" were inconsistent with Plaintiff's reports that she had limited use of her left hand and her

testimony that she has "significant difficulties with standing
due to pain and leaving her home due to anxiety."    Tr. 17.

The ALJ noted imaging studies showed Plaintiff had
degenerative disc disease with "no obvious narrowing,"
degenerative joint disease with "no significant spinal stenosis
or lateral recess narrowing or foraminal stenosis," and only
degenerative changes in Plaintiff's hip.  Tr. 17.  The ALJ found
these results were inconsistent with Plaintiff's testimony
regarding her ability to walk and to stand.  Tr. 17.  The ALJ
also found an imaging study of Plaintiff's brain was normal even
though Plaintiff complains of headaches.  Tr. 17, 884.

In addition, the ALJ concluded Plaintiff's "poor record with
physical therapy" in 2010 further undermined her credibility.
Tr. 17.  In September 2010 Sharon Huchko, D.P.T., stated
Plaintiff's overall rehabilitation potential was poor.  Tr. 975.
Dr. Huchko stated:  "[Plaintiff] exhibits no capacity for
advancement of therapeutic activity during treatment," and her
"[p]otential for continued improvement with skilled intervention,
and for continued progress toward established goals is poor."
Tr. 975.  Dr. Huchko also noted Plaintiff was not complying with
the "outlined clinical treatment program."  Tr. 975.
Accordingly, Dr. Huchko concluded:  "At this time skilled
rehabilitative services . . . are no longer required due to
[Plaintiff's] plateau in progress."  Tr. 975.

13-  OPINION AND ORDER

On this record the Court concludes the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony not entirely credible as to the intensity, persistence, and limiting effects of her conditions.

As noted, Plaintiff identified an error in the ALJ's recitation of the record as to Plaintiff's treatment following the April 22, 2010 accident.  The Court, however, finds such error was harmless because the ALJ otherwise provided clear and convincing reasons for rejecting Plaintiff's testimony.  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008)(a single erroneous basis for an ALJ's determination is harmless error if other valid reasons supporting that determination remain).  The Court, therefore, concludes the ALJ properly discredited Plaintiff's testimony in part.

**II.  Medical opinion testimony.**

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  Specific, legitimate reasons for rejecting a physician's opinion may include reliance on a

claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008). *See also Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995).

When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).

Generally, the more consistent an opinion is with the record as a whole, the more weight an opinion should be given. 20 C.F.R. § 416.927(c)(4).

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902. Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p, at *2. The Social Security Administration notes:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not acceptable medical sources, such as nurse practitioners, physician assistants, and licensed clinical social workers, have

> increasingly assumed a greater percentage of
> the treatment and evaluation functions
> previously handled primarily by physicians
> and psychologists.  Opinions from these
> medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated
> on key issues such as impairment severity and
> functional effects, along with the other
> relevant evidence in the file.

SSR 06-03p, at *3.  Factors the ALJ should consider when

determining the weight to give an opinion from those "important"

sources include the length of time the source has known the

claimant and the number of times and frequency that the source

has seen the claimant, the consistency of the source's opinion

with other evidence in the record, the relevance of the source's

opinion, the quality of the source's explanation of his opinion,

and the source's training and expertise.  SSR 06-03p, at *4.  On

the basis of the particular facts and the above factors, the ALJ

may assign a not-acceptable medical source either greater or

lesser weight than that of an acceptable medical source.  SSR 06-

03p, at *5-6.  The ALJ, however, must provide reasons for the

weight assigned to such opinions to the extent that a claimant or

subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p,

at *6.

**A.    Dr. Jones.**

Plaintiff contends the ALJ erred when he improperly rejected

the opinion of Dr. Jones, a treating physician.

The ALJ noted Dr. Jones provided a number of written

16-  OPINION AND ORDER

opinions regarding Plaintiff's limitations.  Tr. 17-18.  On
March 2, 2010, Dr. Jones wrote:  "I believe she could work but
only [*sic*] a very limited sedentary state."  Tr. 697.  On
March 15, 2010, Dr. Jones deviated from his March 2, 2010,
opinion, stating Plaintiff was "not capable of working even in a
sedentary position" because she was "not coping well with her
depression, anxiety, headaches, and back pain."  On June 29,
2010, Dr. Jones concluded Plaintiff was too disabled to work, but
he recommended Plaintiff receive a psychological evaluation
because "[Plaintiff's] level of pain seems to be beyond the
objective findings, but I do think she has significant anxiety
and depressive disorders that contribute to her chronic pain to
the point where I believe it does disable her.  I suggest that
she see a psychologist or psychiatrist to evaluate that issue
further, but in my estimation, she would not be able to hold down
a 40-hour work week."  Tr. 893.

        The ALJ did not give any weight to Dr. Jones's opinion
regarding Plaintiff's pain symptoms on the ground that "Dr. Jones
does not have a psychological or psychiatric specialty and, as
such, the undersigned cannot give any weight to Dr. Jones's
opinion that the claimant's mental impairments are contributing
to her pain symptoms."  Tr. 18.  The ALJ, however, acknowledged
Dr. Jones's conclusion that Plaintiff's reported pain was in
excess of the objective findings.  Tr.  18.

The Court notes Dr. Jones's opinion that Plaintiff would be unable to maintain a full-time job does not appear to be conclusive in light of Dr. Jones's recommendation that Plaintiff undergo a psychological evaluation to determine whether her depression and anxiety were contributing to her pain symptoms.

Accordingly, the Court concludes on this record that the ALJ did not err when he rejected Dr. Jones's opinion because the ALJ provided legally sufficient reasons supported by the record for doing so.

**B.    Dr. Northway.**

Plaintiff also contends the ALJ erred when he improperly rejected the opinion of Dr. Northway, an examining physician.

The ALJ noted Dr. Northway performed a neuropsychological screening assessment of Plaintiff.  Tr. 18, 820-27.  Dr. Northway noted Plaintiff's scores on the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV), suggest Plaintiff "will complete tasks considerably more slowly than her peers.  She may also struggle when information is provided to her in a nonverbal manner."  Tr. 824.  Dr. Northway also found "[Plaintiff] does not look like she would be a good candidate to work cooperatively or collaboratively with others over a long-term basis."  Tr. 825.  Dr. Northway noted Plaintiff has "some problems with attention and does particularly poorly on processing visual spatial materials."  Tr. 825.  Dr. Northway diagnosed Plaintiff with

anxiety disorder, major depressive disorder, cognitive disorder, and pain disorder.  Tr. 826.

Although ALJ noted Dr. Northway's diagnoses of Plaintiff, the ALJ, as Plaintiff points out, incorrectly stated Dr. Northway "did not provide any specific functional limitations associated with these impairments."  Tr. 18.  As noted, Dr. Northway opined Plaintiff would complete tasks more slowly than her peers, may struggle with nonverbal instructions, would not work cooperatively or collaboratively with others over a long-term basis, and has problems with attention and processing.  Tr. 824-25.  Plaintiff contends the ALJ failed to include the limitations identified by Dr. Northway in Plaintiff's RFC.

Although the ALJ erroneously stated Dr. Northway did not provide an opinion as to Plaintiff's specific functional limitations, the ALJ gave great weight to and adopted the opinion of nonexamining Disability Determination Services[3] physician Kordell Kennemer, Psy.D., who identified the same limitations noted by Dr. Northway.  Tr. 19, 844.  Dr. Kennermer stated: "Given [Plaintiff's] difficulties with processing speed and divided attention as well as affective [symptoms] and pain she would be unable to understand complex tasks.  She can understand

---

[3]  Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

and complete simple tasks.  [S]he would require a workplace with
limited public contact.  She can briefly interact and communicate
socially."  Tr. 844.  The ALJ included these limitations when he
evaluated Plaintiff's RFC; for example, the ALJ found Plaintiff
"is limited to simple and repetitive tasks.  She can have only
sporadic or incidental public contact."  Tr. 15.  The Court also
notes the ALJ's hypothetical posed to the VE included the
limitations identified by Drs. Northway and Kennemer:  "[M]ore
recently we have some non-exertional limitations at a limit [*sic*]
understanding and completing simple tasks and limited public
contact."  Tr. 62.

Accordingly, the Court finds even though the ALJ erred when
he misstated the record with respect to Plaintiff's limitations
as noted by Dr. Northway, any such error is harmless because the
ALJ included the limitations identified by Dr. Northway in the
ALJ's assessment of Plaintiff's RFC.

**C.   Nurse Tafjord.**

Plaintiff also contends the ALJ erred when he improperly
rejected the opinion of N.P. Tafjord, a treating nurse
practitioner.

As noted, the ALJ must consider the opinion of "not-
acceptable" medical sources such as nurse practitioners and must
provide reasons for the weight assigned to such opinions.
Here the ALJ noted N.P. Tafjord "agreed with Dr. Jones's

recommendation that claimant should be referred to a psychologist to evaluated [*sic*] whether she has a pain disorder diagnoses." Tr. 18, 797.  The ALJ also noted N.P. Tafjord considered Dr. Northway's assessment of Plaintiff and concluded Plaintiff "would decompensate under the stress of a full-time work schedule on top of having to take care of herself, to the point that she would not be able to maintain a regular work schedule.  She would not show up reliably to work and be able to consistently perform even simple routine tasks throughout an eight-hour workday." Tr. 920.  The ALJ gave "only little weight" to N.P. Tafjord's opinion on the ground that her opinion "appears to be overstated and unsupported."  Tr. 18.  The ALJ found N.P. Tafjord did not explain or provide support for her opinion, and the ALJ concluded that the record does not support her opinion that Plaintiff would decompensate under the stress of full-time employment.  Tr. 18. The ALJ also found it did not appear that N.P. Tafjord was aware of Plaintiff's activity as reported to Plaintiff's physical therapist in June 2010.  Tr. 18.  The ALJ concluded:  "If [Plaintiff] can attend a three and one half hour graduation, five hours of racing and traveling to these events, there is no reason she cannot perform the unskilled occupations identified." Tr. 18.  The ALJ, however, credited portions of N.P. Tafjord's opinion when he included in Plaintiff's RFC the limitations of "no more than incidental and sporadic public contact and no more

than simple, routine tasks." Tr. 18.

The Court concludes on this record that the ALJ did not err when he rejected in part N.P. Tafjord's opinion because the ALJ provided legally sufficient reasons supported by the record for doing so.

**III. The ALJ's hypothetical posed to the VE was complete.**

Plaintiff contends the ALJ's hypothetical to the VE was inadequate because it did not contain the limitations testified to by Plaintiff and those identified by Dr. Northway.

The Court has already concluded the ALJ properly considered Plaintiff's limitations in his evaluation of Plaintiff's RFC.  On this record the Court also concludes the ALJ included these limitations in the hypothetical posed to the VE.


<u>**CONCLUSION**</u>

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 21st day of October, 2013.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge